UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MATTHEW ALAN SCHROCK, JR.,

    Plaintiff,

    v.                                              CAUSE NO. 3:19-CV-510-JD-MGG

GALIPEAU, et al.,

    Defendants.

## OPINION AND ORDER

Matthew Alan Schrock, Jr., a prisoner without a lawyer, filed this action under 42 U.S.C. § 1983. He alleges that during 2018 and 2019, he was served Kosher meals at Westville Correctional Facility ("Westville") that were spoiled, missing items, and in some instances contained foreign objects, which inhibited his ability to practice his Messianic Hebrew Israelite religion and left him feeling hungry. He was granted leave to proceed on claims against Warden John Galipeau, Captain Jason Smiley, and Captain Gary Lewis under the First Amendment, the Eighth Amendment, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a), for monetary damages and injunctive relief. (ECF 21.)

Defendants now move for summary judgment. (ECF 37.) Warden Galipeau argues that Mr. Schrock's claim against him for injunctive relief is moot now that he has been transferred to New Castle Correctional Facility. The remaining defendants argue that Mr. Schrock did not exhaust his available administrative remedies before filing suit as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.

Under Federal Rule of Civil Procedure 56, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In deciding whether a genuine dispute of material fact exists, the court must "consider all of the evidence in the record in the light most favorable to the non-moving party, and . . . draw all reasonable inferences from that evidence" in that party's favor. *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (citation omitted).

Mr. Schrock was notified of the Defendants' motion for summary judgment and granted an extension of time to respond to it.[1] (ECF 40.) His response was due February 8, 2021, but that deadline has passed and no response has been filed. Pursuant to N.D. Ind. Local Rule 7-1(d)(5), the court may rule summarily if a party fails to timely respond to a motion. Nevertheless, "[s]trict enforcement of [local rules] does not mean that a party's failure to submit a timely filing automatically results in summary judgment for the opposing party." *Wienco, Inc. v. Katahn Assoc., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992). Rather, that failure "causes all factual assertions alleged by the opposing party to be deemed admitted." *Id.; see also Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021) ("Rule 56 imposes an affirmative obligation on a movant that we cannot ignore merely because a nonmovant provides no responsive arguments.").

---

[1] Defendants mailed Mr. Schrock a copy of their summary judgment filings along with the notice required by N.D. Ind. L.R. 56-l(f) in early December 2020. (*See* ECF 37-39.) Because Mr. Schrock was moved to another correctional facility around that same time, out of an abundance of caution, the court had all the summary judgment filings resent to him by the clerk at his new facility. (ECF 40.) There is nothing on the docket to reflect that these filings did not reach him.

The court turns first to Warden Galipeau's argument. In the screening order, Mr. Schrock was permitted to proceed against the Warden "in his official capacity for injunctive relief related to the provision of adequate Kosher meals as required by RLUIPA." (ECF 23 at 5.) However, Mr. Schrock has since been transferred to New Castle Correctional Facility, and there is no indication he is likely to return to Westville any time in the near future. (*See* ECF 36.) Accordingly, Mr. Schrock's claim for injunctive relief against Warden Galipeau has become moot. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996).

Turning to the exhaustion issue, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner. . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Failure to exhaust is an affirmative defense that the defendant has the burden of proving. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The purpose of the exhaustion requirement is "to give the prison an opportunity to address the problem *before* burdensome litigation is filed." *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Thus, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id*. at 1024.

Nevertheless, inmates are only required to exhaust administrative remedies that are actually available. *Woodford*, 548 U.S. at 102. The availability of a remedy is not a matter of what appears on paper, but rather, whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus, when prison staff hinder an inmate's ability to use the administrative process, such as by failing to provide him with the necessary forms, administrative remedies are not considered "available." *Id.* In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

At all relevant times, Westville had a grievance process in place consisting of three steps: (1) a formal grievance following attempts at informal resolution of the problem (whether by speaking with the staff member involved, letter-writing, or similar means); (2) a written appeal to the Warden or his designee; and (3) a written appeal to the Indiana Department of Correction Grievance Manager. (ECF 37-2 at 3, 8-9.) Inmates are made aware of the policy upon their arrival at Westville, and the policy is also available in the prison law library and by request from each inmate's unit team manager. (ECF 37-4 ¶¶ 6-7.)

Official grievance records submitted by Defendants reflect that Mr. Schrock filed a grievance in May 2017 complaining that he did not receive a Kosher meal on Passover. (ECF 37-3 at 1-2.) The grievance was denied because Mr. Schrock had not formally requested a Kosher diet. (*Id.* at 1.) He appealed, but the appeal was also denied. (*Id.*)

4

This grievance made no mention that Mr. Schrock was being served Kosher meals that were spoiled, missing items, or contained foreign objects. It was also filed long before the events giving rise to this suit and at a different correctional facility. Defendants argue, and the court agrees, that this grievance did not satisfy the exhaustion requirement as to the claims raised in this lawsuit. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (observing that the purpose of the grievance process is to alert officials to a problem so that corrective action can be taken); *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) (observing that "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought").

For completeness, the court notes that there is another grievance included in the record aside from the one submitted by Defendants. Even though Mr. Schrock did not respond to the summary judgment motion, he attached a grievance dated November 28, 2018, to his original complaint, in which he complains about inadequate portions, spoiled foods, and finding a live insect in one of his Kosher meals during early November 2018.[2] (ECF 1-1 at 8.) This grievance appears to encompass at least some of the claims raised in this lawsuit. However, the grievance was not accepted for filing. Mr. Schrock also attaches documentation showing that the grievance was returned to

---

[2] The grievance bears a "received" file stamp by the Westville grievance office, and it is unclear why this document was not submitted by Defendants as part of the official grievance record. (ECF 1-1 at 8.) It appears, perhaps, that the grievance may have been lost after it was returned to Mr. Schrock unfiled rather than assigned a log number. The grievance specialist attests that he searched for records of grievances that were returned to Mr. Schrock unfiled but was unable to locate any such records, and the court has no reason to disbelieve him. (*See* ECF 38 ¶ 28.) Any omission by Defendants was harmless in this instance, but the court trusts that Defendants will ensure the accuracy of grievance records submitted to the court in the future.

5

him unfiled on December 7, 2018, with the notation that he did not provide information showing that he had tried to informally resolve the problem with his food before filing a formal grievance. (*Id.* at 7.) He was told that if he had made efforts to informally resolve the issue, he should resubmit the grievance and include this information. (*Id.*) Alternatively, he was told that if he had not yet tried to informally resolve the problem, he was required to do so before filing a formal grievance. (*Id.*) Under the grievance policy, it was his responsibility to make any needed revisions and resubmit the grievance within five business days. (ECF 37-2 at 10.) There is no indication from either official grievance records or Mr. Schrock's own filings that he did so.

Mr. Schrock alleges in his amended complaint that the grievance process was made unavailable to him. (ECF 23 at 6.) However, it is incumbent upon him to provide specifics about how he was prevented from exhausting in order to defeat summary judgment. *See Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013) (because the plaintiff failed to provide specifics about how he was prevented from exhausting, summary judgment for the defendants was proper). As stated above, he did not file any response to the motion for summary judgment, and his amended complaint asserts only generally that he was prevented from exhausting because Westville grievance specialist Joshua Harvil "refused to assist the plaintiff in the resolution of these issues." (ECF 23 at 6.) It is unclear precisely what he means by this, but there is nothing in the record to suggest that prison staff used "affirmative misconduct" to prevent him from exhausting. *Dole*, 438 F.3d at 809. Rather, it appears he simply did not pursue his remedies further after the November 2018 grievance was returned to him for additional

6

information. However, even if the court were to presume that he resubmitted this grievance and that it was ignored or lost, he had another remedy available: If he did not receive a response to his grievance within 20 business days, the grievance policy permitted him to proceed to the next step "as though the grievance had been denied." (ECF 37-2 at 11.) Mr. Schrock does not claim, and official grievance records do not show, that he ever took this step. Prior grievance records reflect that Mr. Schrock was aware of the grievance policy and how to use it. (*See* ECF 37-3 at 1-2.) Therefore, the record shows that he did not exhaust his available administrative remedies before filing suit.

For these reasons, the motion for summary judgment (ECF 37) is GRANTED. The plaintiff's claim for injunctive relief against the Warden is DISMISSED as moot. His remaining claims are DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies in accordance with 42 U.S.C. § 1997e(a). The clerk is DIRECTED to close this case.

SO ORDERED on April 27, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT